IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,　　:

　　　Plaintiff,

　　v.　　　　　　　　　　　　:　　Case No. 3:17-cr-183

ROBERT STROUD, *et al.*,　　　　　　JUDGE WALTER H. RICE

　　　Defendants.　　　　　　:

---

DECISION AND ENTRY OVERRULING DEFENDANT ROBERT STROUD'S MOTION TO RECONSIDER MOTION TO SUPPRESS AND REQUEST FOR *FRANKS* HEARING (DOC. #80) AND AMENDED MOTION TO RECONSIDER MOTION TO SUPPRESS AND TO REQUEST *FRANKS* HEARING (DOC. #88)

---

On July 2, 2018, the Court issued a Decision and Entry Overruling Motions of Defendant Robert Stroud and Jordan Smith for a *Franks* Hearing. Doc. #78. The Court concluded that Defendants had failed to make a substantial showing that: (1) in order to obtain the October 21, 2016, search warrant, Officer Alexander Hillman knowingly and intentionally, or with reckless disregard for the truth, included false statements in his Affidavit, indicating that Stroud was Harris's "baby's mama's daddy" and that Stroud and Harris had 13 telephone contacts on September 16, 2016; or (2) these allegedly false statements were necessary to a finding of probable cause.

The Court further concluded that, viewing the Affidavit as a whole, there was sufficient evidence to support a finding that Stroud was engaging in drug trafficking activity, and that there was a fair probability that a search warrant authorizing collection of information about the location of Stroud's cell phone would lead to evidence of that drug trafficking activity. Doc. #78, PageID#455. Accordingly, the Court found that no *Franks* hearing was warranted.

Defendant Stroud has filed a Motion to Reconsider Motion to Suppress and Request for *Franks* Hearing, Doc. #80, in which he raises several new arguments. He now argues that: (1) paragraphs 7 and 8 of Hillman's Affidavit contain other material omissions and false statements that destroy probable cause for the search warrant; and (2) paragraphs 9 and 10 of Hillman's Affidavit contain other false statements that destroy probable cause for the search warrant.

The Government filed a Response, Doc. #86, arguing that Stroud has failed to make a substantial preliminary showing that Hillman made a material omission with intent to mislead the issuing judge or that such an omission was critical to a probable cause finding. It also argues that Stroud failed to show that a material misstatement was made intentionally or with reckless disregard for the truth.

On August 1, 2018, Stroud filed an "Amended Motion to Reconsider Motion to Suppress and to Request *Franks* Hearing," Doc. #88. Although entitled an "Amended Motion," this document appears to be merely a supplement to the initial Motion to Reconsider. Stroud maintains that, because certain cell phone records allegedly relied upon by the Government were not provided by T Mobile until

2

November 10, 2016, those records could not have formed the basis for the issuance of the October 21, 2016, search warrant.

On August 28, 2018, the Government filed its Response to the Amended Motion to Reconsider, Doc. #98. It again argues that Stroud has failed to make a substantial preliminary showing the Hillman entertained serious doubts about the truth of his Affidavit or had an obvious reason to doubt the accuracy of the information contained therein. The Government provides evidence that Hillman did have access to the relevant cell phone records prior to requesting the warrant. It also again argues that, even if paragraph 10 is excised from the Affidavit, probable cause still exists.

I. **Relevant Law**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held as follows:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155–56.

3

In other words, a hearing is required only if the defendant makes a substantial preliminary showing that: (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit; and (2) that allegedly false statement is necessary to the finding of probable cause. *Id.*

Warrant affidavits are presumed to be valid. Accordingly, allegations that they contain deliberately false or misleading statements or statements made with reckless disregard for the truth "must be accompanied by an offer of proof." *Id.* at 171. "Allegations of negligence or innocent mistake are insufficient." *Id.* A statement is made "with reckless disregard for the truth" when viewing all the evidence, "the affiant in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein." *United States v. Cican*, 63 F. App'x 832, 835-36 (6th Cir. 2003).

A defendant may also obtain a *Franks* hearing based on an allegedly material *omission* in a warrant affidavit; however, this is subject to a higher standard. *United States v. Fowler*, 535 F.3d 408, 415-16 (6th Cir. 2008). In *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998), the Court held that, "except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Id.* at 816 (emphasis in original). The defendant

4

must show that the material was "deliberately or recklessly omitted" and that, had it been included in the warrant affidavit, it would have negated a finding of probable cause. *United States v. Carpenter*, 360 F.3d 591, 596–97 (6th Cir. 2004).

## II. Paragraphs 7 and 8

Paragraph 7 of Officer Hillman's Affidavit states as follows:

> In the hours after that [early September 2016] purchase, HARRIS contacted the CS by phone and explained that HARRIS was waiting on a new supplier, referring to the supplier by his street name, "BONJO."

Doc. #80-1, PageID#477.

Stroud challenges this statement on several grounds: (1) this conversation was not recorded; (2) in other recorded conversations, the Confidential Source ("CS") cannot accurately recall the name of the new supplier, referring to him as "BeJu," "ByJu" and "Banjo"; and (3) during a September 16, 2016, phone call, agents informed the CS that the supplier that Harris was talking about was "Bonjo." Stroud suggests that, based on the foregoing, it appears that the agents may have "fed" his name to the CS.

The Government notes, however, that Stroud has produced no recordings or other evidence to support this theory. Nor has Stroud produced any evidence that Hillman's statement—that Harris told the CS that he was waiting on "Bonjo," who was his new supplier—was false. The CS's subsequent uncertainty as to the

5

correct pronunciation of Bonjo's name does not give rise to an inference that Harris never told the CS that his new supplier was known as "Bonjo." Because Stroud has failed to make a substantial showing that the statement at issue was false, the concerns he raises do not warrant a *Franks* hearing.

Paragraph 8 of Officer Hillman's Affidavit, concerning a controlled meeting that allegedly took place in mid-September of 2016, between Harris and the CS, states as follows:

> HARRIS told the CS that he would call the CS in an hour after he (HARRIS) met with HARRIS' baby's mama's daddy. The CS asked HARRIS if this was the same person who used to supply the Cincinnati area (referring to 'BONJO') and HARRIS said yes. After this meeting, the CS also reported speaking with HARRIS later that same day (which was not monitored by law enforcement). During that second conversation, the CS reported that HARRIS said BONJO is feeling HARRIS out and not fronting HARRIS large quantities of drugs at this time, because BONJO is seeing how fast HARRIS can sell the narcotics and return with the proceeds.

Doc. #80-1, PageID##477-78.

Hillman's statement implies that Harris's baby's mama's daddy is Stroud, aka "Bonjo," and that Stroud is Harris's new supplier. As discussed in the previous Decision and Entry, Stroud denies that he is Harris's "baby mama's daddy." Nevertheless, this statement is not impeachable because Hillman was merely repeating what the CS told him that Harris had said. Because the statement at issue was that of the CS, and not Hillman, it is not subject to a *Franks* analysis. Doc. #78, PageID#451 (citing *Franks*, 438 U.S. at 171).

6

Stroud now argues, however, that Hillman made a material omission by failing to include additional information about what happened on the day that this conversation allegedly took place. A DEA report concerning Harris's activities on the afternoon of September 16, 2016, indicates that the CS attempted to make a controlled buy, but Harris had no drugs available at that time. He told the CS that he would call him after he obtained more from "his baby mama's daddy." Harris confirmed that this was the same guy who used to supply drugs in Cincinnati (referring to Stroud). Doc. #80-2, PageID#485.

Stroud argues that one would expect that, if he was, in fact, Harris's new supplier, officers would have observed Harris meeting with him immediately after Harris's conversation with the CS. However, there is no evidence that Harris met with Stroud on the afternoon of September 16, 2016.

The DEA report indicates that officers followed Harris to a house in Dayton, where they observed him with Tonisha Williamson. The officers then observed Harris leave her residence and drive to Markam Auto Sales. A maroon Monte Carlo with two younger black males also arrived there. After one of those males showed a half-full white plastic bag to a third black male who came out of the garage, all three black males entered the garage. A black male who was not Harris then came out and pulled Harris's car into the garage. Officers then observed a black male remove a full black backpack from the Monte Carlo and place it inside a black Dodge pickup. *Id.* at PageID#486.

7

Because Stroud is not implicated in the DEA report, he argues that including information about that report in the Affidavit would have negated any suggestion that Harris met with him on September 16, 2016, or that he was Harris's new supplier. He maintains that, in omitting this information from his Affidavit, Hillman engaged in a reckless disregard for the truth.

The Government, however, argues that Stroud has failed to make a strong preliminary showing that this omission was made with the intent to mislead the magistrate. The Court agrees. Hillman was simply recounting the conversations that took place between Harris and the CS, conversations that give rise to a strong inference that Stroud is Harris's new supplier. Although the DEA report could be construed to discredit the CS's statements, Stroud has presented no proof that Hillman deliberately or recklessly omitted the contents of that report from his Affidavit with the intent to mislead.

Moreover, Hillman's omission of the contents of the DEA report is not material to the question of probable cause. Regardless of whether Harris and Stroud actually met each other on September 16, 2016, the same day that Harris told the CS that "Bonjo" was his new supplier, there is ample other evidence to support a finding of probable cause to believe that collecting information concerning the location of Stroud's cell phone would lead to evidence of drug trafficking activity.

As the Court explained in its previous Decision and Entry, Hillman's Affidavit indicates that the CS had observed Harris with large quantities of narcotics in his

possession. Early in September of 2016, the CS made a controlled purchase of fentanyl from Harris, who told the CS that he was waiting on a new supplier named "Bonjo." Harris confirmed that this person had previously supplied drugs in the Cincinnati area. In mid-September, Harris also told the CS that Bonjo was not fronting him large quantities of drugs at that time, because he first wanted to see how quickly Harris could sell the drugs and return with the proceeds. DEA agents knew that "Bonjo" was Robert Stroud's nickname, and that Stroud had two previous convictions for drug trafficking in southwest Ohio. Moreover, Stroud's cell phone number started to appear in Harris's cell phone records about the same date that Harris told the CS that Bonjo was his new supplier. Under these circumstances, including information about the contents of the DEA report in Hillman's Affidavit would not be sufficient to negate a finding of probable cause.

### III. Paragraphs 9 and 10

Paragraphs 9 and 10 of Hillman's October 21, 2016, Affidavit concern Stroud's cellular telephone, 937-318-7977, referred to in Hillman's Affidavit as the "Target Telephone." Those paragraphs state as follows:

> 9. On 13 October 2016, a controlled-call was placed by the CS to HARRIS. HARRIS gave the CS a new phone number where HARRIS could be reached, namely 937-329-4322. HARRIS referred to this new number as "his business phone". It is common for traffickers to use certain phone numbers just for communicating with co-conspirators in an attempt to thwart law enforcement. DEA investigators have obtained HARRIS' cellular phone tolls and the subscriber information of phone numbers HARRIS calls. When analyzing the toll data from HARRIS' 937-

9

> 329-4322 phone, DEA investigators observed that **Target Telephone** started to appear in HARRIS' tolls about the date that HARRIS told the CS that he was dealing with "BONJO" as a new supplier. The subscriber for **Target Telephone** is "Stroud Enterprises LLC" with an address on 3761 Denlinger Road in Dayton. This same address was listed on STROUD's 2011 Ohio driver's license.
>
> 10. On 16 September 2016, HARRIS told the CS he was about to meet with "BONJO" to re-supply. HARRIS' tolls on that day show the **Target Telephone** was in contact with HARRIS' phone (13) thirteen times. HARRIS had contact with only one other number other than the **Target Telephone** that day on "his business phone". Based on the above information, Affiant believes STROUD is the supplier HARRIS referred to as "BONJO." By identifying the **Target Telephone's** location, investigators can identify STROUD's location and places where drugs are being stored and distributed, and the[n] possibly identify others who may be involved in the drug trafficking activity.

Doc. #80-1, PageID#478.

Stroud again maintains that paragraphs 9 and 10 contain materially false information, given that none of the toll data for Harris's 937-329-4322 phone number indicates that Harris and Stroud were in communication with each other by telephone in mid-September of 2016. Stroud argues that once these materially false statements are stripped from Hillman's Affidavit, the magistrate judge could not have concluded that probable cause existed to issue the October 21, 2016, search warrant.

As previously noted, the Government concedes that Hillman's statement that Harris and Stroud were in telephone contact 13 times on September 16, 2016, is inaccurate. It argues, however, that Stroud has failed to make a substantial preliminary showing that Hillman intentionally made any false

10

statements or that he entertained serious doubts about the truth of these statements or had obvious reasons to doubt their accuracy. Negligent statements are insufficient to trigger a *Franks* hearing. *Franks*, 438 U.S. at 171.

As stated in paragraph 9 of the Affidavit, Stroud's number did, in fact, begin showing up in toll data for Harris's cell phone about the same time that Harris told the CS that Bonjo was his new supplier. Toll data for 937-329-4322 indicates that Harris was in contact with Stroud's cell phone on September 27, 2016, October 5, 2016, October 6, 2016, October 7, 2016, October 8, 2016, October 10, 2016, and October 13, 2016. Doc. #98-2, PageID##560-68. Accordingly, paragraph 9 of Hillman's Affidavit does not contain any false statements.

Stroud maintains that, because the Government did not obtain this data from T-Mobile until November 10, 2016, it was not available to DEA agents and could not have been relied upon by Hillman in support of his October 21, 2016, Affidavit. The Government, however, has submitted a Declaration of Scott Morningstar, a Support Analyst to the DEA Dayton Resident Office. He indicates that, on October 13, 2016, a subpoena was sent to AT&T, requesting toll data for 937-329-4322, from September 13, 2016, through October 12, 2016. AT&T provided that data, which Morningstar made available to DEA investigators in the Dayton Resident Office, on October 18, 2016. Doc. #98-1, PageID#549. Accordingly, Hillman did have access to these phone records prior to swearing his October 21, 2016, Affidavit.

11

Paragraph 10 does contain a false statement in that Harris and Stroud were not in contact by telephone 13 times on September 16, 2016. Stroud, however, has presented no proof that Hillman made this false statement knowingly and intentionally, or with reckless disregard for the truth. Moreover, given Hillman's access to the phone records showing numerous other telephone contacts between Harris and Stroud between the end of September and mid-October, it cannot be said that he entertained serious doubts about the truth of his statement or had obvious reasons to doubt its accuracy. The Court finds that Hillman's statement that Harris and Stroud were in phone contact 13 times on September 16, 2016, was, at most, negligent.

The Government further argues that, even if this statement is excised from Hillman's Affidavit, probable cause still exists for the issuance of the search warrant. The Court previously held that, even if Stroud made a substantial showing that this statement was made in reckless disregard of the truth, it was not necessary to a finding of probable cause. Doc. #78, PageID##456-57. Hillman's Affidavit indicates that Stroud's cell phone number started appearing in Harris's toll records about the same time that Harris told the CS that Bonjo was his new supplier. Regardless of whether the first telephone contact between Harris and Stroud happened on September 16, 2016, or several days later, the other statements in Hillman's Affidavit are sufficient to support a finding that Robert Stroud, aka "Bonjo," was supplying Harris with drugs.

Nothing in Stroud's Motion to Reconsider or his Amended Motion to Reconsider convinces the Court that the statement at issue was necessary to a finding of probable cause. For the reasons previously stated, the Court finds that, even if the offending statement is excised from the Affidavit, there is still a fair probability, given the totality of the circumstances, that contraband or evidence of a crime would be found by tracking the location of Stroud's cell phone.

Accordingly, the Court OVERRULES Defendant Stroud's Motion to Reconsider Motion to Suppress and Request for *Franks* Hearing, Doc. #80, and Defendant Stroud's Amended Motion to Reconsider Motion to Suppress and Request for *Franks* Hearing, Doc. #88.[1]

Date: September 17, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[1] On August 13, 2018, the Court held an evidentiary hearing on the non-*Franks* aspects of the Motions to Suppress. The Court will issue a decision after post-hearing briefs have been filed.